## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TONY E. STARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-188-RAW-SPS |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Tony E. Starr requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-five years old at the time of the most recent administrative hearing, although he was forty-six years old on the alleged onset date (Tr. 1079). He completed high school, and has worked as a driller, floor hand, diesel mechanic helper, and appliance line assembler (Tr. 133, 1063). The claimant alleges inability to work since March 5, 2011, due to diabetes, degenerative arthritis, depression, bursitis, carpal tunnel, and tennis elbow (Tr. 132).

### Procedural History

On March 28, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 25, 2013 (Tr. 15-24). The Appeals Council denied review, but this Court reversed and remanded to the ALJ in Case No. CIV-14-361-FHS-KEW (Tr. 497-514). On remand, ALJ James Stewart conducted a second administrative hearing and found that, prior to September 30, 2013, the claimant was not disabled, but that on September 30, 2013, he met the criteria for disability and continued to be disabled thereafter (Tr. 368-383). The claimant appealed the portion of the ALJ's decision finding him not disabled from March 5, 2011, through September 30, 2013,

and the Appeals Council again denied review, but this Court again reversed and remanded the ALJ's decision following an unopposed Motion to Remand in Case No. CIV-18-65-RAW-SPS (Tr. 1140-1143). On remand, ALJ Glenn A. Neel held a third administrative hearing and again determined that the claimant was not disabled for the closed period of March 5, 2011, through September 30, 2013, in a written decision dated March 3, 2020 (Tr. 1051-1064). The Appeals Council again denied review, so ALJ Neel's March 2020 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

ALJ Neel made his decision at step five of the sequential evaluation. He found that, from March 5, 2011 through September 30, 2013, the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl, reach bilaterally, handle bilaterally, and finger bilaterally, and that he could never climb ladders/ropes/scaffolds and must avoid concentrated exposure to extremes, humidity, and hazards (Tr. 1055). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, furniture rental consultant, children's attendant, investigator, and dealer accounts, as well as call out operator and surveillance system monitor (Tr. 1063-1064).

### Review

The claimant contends that the ALJ's opinion is not supported by substantial evidence because he failed to: (i) properly determine the claimant's RFC, and (ii) properly

-4-

determine the work he could perform in accordance with step five.  As part of his first argument, the claimant contends the ALJ improperly concluded he could perform light work, failed to properly evaluate a treating physician opinion, failed to properly account for his mental impairments, and failed to properly account for his subjective complaints. The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should be reversed.

The ALJ found that the claimant had the severe impairments of diabetes mellitus, cervical syndrome superimposed over degenerative changes, bilateral shoulder impingement syndrome and acromioclavicular (AC) joint arthritis, right lateral epicondylitis, bilateral carpal tunnel syndrome, osteoarthritis and degenerative disc disease of the lumbar spine, insomnia, and hypertension, as well as the nonsevere impairment of depression (Tr. 1053-1054).  The relevant medical evidence shows the claimant had an MRI of the right shoulder on April 18, 2011, showing impingement syndrome and lateral epicondylitis (Tr. 216, 222).  Radiographs of the cervical spine from March 2011 revealed cervical syndrome superimposed over degenerative changes, bilateral impingement syndrome of the shoulder with slight adhesive capsulitis on the right shoulder, lateral epicondylitis of the right elbow, and bilateral carpal tunnel syndrome (Tr. 220).

Treatment notes generally reflect that the claimant's diabetes was at times uncontrolled (Tr. 344, 353).  Additionally, the claimant had undergone some steroid injections of the elbows and right shoulder, with little relief (Tr. 354).  He was recommended for surgery due to his lack of response to injections (Tr. 357, 359).  On July

12, 2012, the claimant was assessed with a rotator cuff tear of the right shoulder, acromioclavicular joint arthritis, and bilateral carpal tunnel (Tr. 358).

On June 7, 2011, Dr. Mohammed Quadeer, M.D., conducted a physical examination of the claimant (Tr. 262-269). Upon exam, he assessed the claimant with uncontrolled insulin-dependent diabetes mellitus, degenerative arthritis of the back, depression, and right tennis elbow status post steroid injections without any relief (Tr. 264). He noted that the claimant's lumbar-sacral spine was tender at L4-L5 with limited range of motion associated with muscle spasms, but that straight leg raising tests were negative (Tr. 264, 266).

On June 21, 2011, Dr. Patricia Walz, Ph.D., conducted a mental diagnostic evaluation of the claimant (Tr. 270-274). She found that his thought content was notable for suicidal ideation without plan or intent (Tr. 273). She assessed him with depression secondary to medical condition of chronic pain (Tr. 273). She noted, *inter alia*, that his social skills were fair, his intellectual functioning was in the low average to average range, he persisted well, and his attention and concentration were adequate (Tr. 273-274).

By August 2011, Dr. Michael Wolfe assessed the claimant with impingement syndrome and lateral epicondylitis, right upper extremity, improved, but also noted that the claimant's cervical disc may be causing numbness and bilateral positive Tinel (Tr. 300). He also assessed the claimant with lumbar syndrome superimposed over mild degenerative disc disease (Tr. 300).

On November 30, 2012, Dr. Allen Beachy, who treated the claimant for seven years through Cooper Clinic, P.A., completed a physical Medical Source Statement (MSS). Dr.

Beachy indicated that the claimant could sit for thirty minutes at a time, up to four hours in an eight-hour workday; stand twenty minutes at a time, and walk fifteen minutes at a time, each for up to two hours in an eight-hour workday (Tr. 361). He further indicated that the claimant would need to alternate sitting and standing at thirty-minute intervals, and that the claimant could only occasionally lift/carry up to ten pounds, and only occasionally push/pull, grasp, and finger (Tr. 361-362). He further checked boxes indicating that the claimant could rarely reach or work in extended position, and never work above shoulder level or overhead (Tr. 362). Furthermore, he indicated that the claimant could rarely bend and stoop, balance, or climb stairs/ramps, and he could never stoop, crawl, crouch, kneel, or climb ladders/scaffolds (Tr. 362-363). Finally, he indicated that the claimant would have a marked limitation in handling vibrating tools (Tr. 363). He based this assessment on examination and observation of the claimant over seven years (Tr. 363).

On March 4, 2013, Dr. Robert L. Spray, Ph.D., conducted a psychological evaluation of the claimant (Tr. 797-799). He noted that the claimant was generally oriented, with an estimated average IQ, although he showed moderate difficulty with attention and concentration and short-term immediate memory (Tr. 799). He assessed the claimant with depression secondary to pain (Tr. 799). He then completed a mental RFC assessment, in which he indicated that the claimant had marked impairments when it came to interacting with supervisors, dealing with work stresses, reliability, behaving in an emotionally stable manner, and accepting instructions and criticisms from supervisors, as well as numerous moderate impairments, including independently functioning,

maintaining attention and concentration for extended periods of time, maintaining regular attendance, and responding appropriately to changes in the work setting (Tr. 800-802).

State reviewing physicians determined that the claimant could perform light work with limited overhead reaching with the right upper extremity due to right shoulder impingement (Tr. 337-343). Additionally, state reviewing physician Dr. Gary Lyndsay, Ph.D., found the claimant's mental impairment was not severe, causing only mild limitations in the areas of functional limitation and there being no extended episodes of decompensation (Tr. 276-288). This was affirmed upon reconsideration (Tr. 308-334).

In his written opinion at step four, the ALJ summarized at length the claimant's hearing testimony and the medical evidence in the record (Tr. 1056-1063). He then indicated that that he found the claimant's statements inconsistent with the medical evidence. The ALJ's analysis here is not entirely clear, but he does note that the claimant was recommended for surgery but that the records do not reflect that the claimant followed up on it, and the ALJ does not address the claimant's inability to afford such treatment in light of notes that there were times he could not afford his diabetes medication (Tr. 1058-1059). As to the opinion evidence, the ALJ summarized, *inter alia*, the opinions of Dr. Quadeer, Dr. Walz, Dr. Beachy, and Dr. Spray. As to Dr. Quadeer, he gave some weight to his opinion, finding the record reflected "relatively physical diagnostic findings" and could be accommodated by the RFC listed above (Tr. 1060). As to Dr. Walz, the ALJ gave some weight to her opinion, inasmuch as it supported a finding that the claimant's mental impairment was nonsevere (Tr. 1060-1061). As to Dr. Beachy, the ALJ gave his opinion little weight, stating that there were no objective findings in the record or listed in support

of his opinion (Tr. 1061).  As to Dr. Spray, he assigned the opinion little weight, stating that it was not supported by the record, that he did not provide the basis or objective findings in support, and he only examined the claimant one time (Tr. 1062).  The ALJ gave substantial weight to the state reviewing physician opinion that the claimant could perform light work with the overhead reaching limitation, but only some weight to state reviewing physician opinions from a subsequent application completed after the claimant's disability date of September 30, 2013 (Tr. 1062).  He thus concluded that the claimant was not disabled from March 5, 2011 through September 29, 2013 (Tr. 1062-1064).

The undersigned Magistrate Judge finds that the ALJ failed to properly assess the evidence regarding the claimant's physical impairments.  The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include some postural and environmental limitations related to the claimant's physical impairments in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for *each* of the claimant's severe impairments,

*i. e.*, diabetes mellitus, cervical syndrome superimposed over degenerative changes, bilateral shoulder impingement syndrome and acromioclavicular (AC) joint arthritis, right lateral epicondylitis, bilateral carpal tunnel syndrome, osteoarthritis and degenerative disc disease of the lumbar spine, insomnia, and hypertension. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). This was a significant omission here because each of these impairments can have limitations that directly impact the claimant's ability to perform work. If not, the ALJ should have explained why the claimant's severe impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects.") (*citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir 1984)). Furthermore, the ALJ here failed to address the claimant's severe and nonsevere impairments *in combination* when assessing the RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted

-10-

impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

The claimant also asserts, in relation to his RFC, that the ALJ erred in evaluating the opinion evidence in the record, and the undersigned Magistrate Judge agrees.[3] The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301 (*citing Drapeau v. Massanari,* 255

---

[3] Here, the claimant's application for Title II benefits was filed March 28, 2011. The undersigned Magistrate Judge recognizes that for claims filed on or after March 27, 2017, medical opinions are evaluated under a different standard pursuant to 20 C.F.R. § 404.1520c, which is not applicable here.

F.3d 1211, 1213 (10th Cir. 2001)). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 (*citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citation omitted) (*citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995)).

Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it. Here, the ALJ assigned a "weight" to each opinion but failed to properly apply the *Watkins* factors to *any* of them, and particularly as to his rejection of the limitations assessed by Dr. Beachy given their seven-year treatment relationship. Furthermore, the ALJ failed to account for the fact that the claimant continued to seek out and receive treatment for persistent back, joint, and upper extremity pain even though he acknowledged that such pain kept the claimant out of work for over a year, as well as repeated difficulties managing his diabetes. This is particularly troubling where, as here,

the ALJ failed to take into account the fact that the claimant engaged in continuing and ongoing efforts to receive treatment for persistent and worsening physical impairments, as well as failed to account for assessments that stress was a factor in the evidence regarding his ability to function.    *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") (*citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984)).

In light of the number of remands that have already occurred in this case, as well as the length of time this case has been pending, the undersigned Magistrate Judge "acknowledges Claimant's request for a remand with instructions to award benefits," and "declines to remand with an award instruction on this occasion but reserves the right to do so in any future appeal should the Commissioner fail in the execution of her obligation under the law as blatantly as was done in this latest decision."    *Wilkerson v. Colvin*, 2014 WL 1217768, at *4 (E.D. Okla. Feb. 28, 2014).    *But see Wilkerson v. Colvin*, 2016 WL 4530625, at *2 ("Here, the Social Security Administration has been given numerous opportunities to properly evaluate the same issue . . . This has taken ten years. . . . Under these circumstances, the undersigned Magistrate Judge finds that additional fact finding would only serve the purpose of delay of the receipt of benefits, and that a ten-year delay involving three appeals to this Court was sufficient time to allow the Social Security Administration to properly adjudicate the Plaintiff's disability application.") (*affirmed and adopted by Wilkerson v. Colvin*, 2016 WL 4532119 (E. D. Okla. Aug. 29, 2016) (slip op.)).

-13-

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**